## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## COLUMBUS DIVISION

| | | |
|---|---|---|
| **QUETIN MONDAY,** <br> **Individually and on behalf** <br> **of all others similarly situated,** | § <br> § <br> § <br> § | Civil Action No. _____ |
| | § | |
| *Plaintiff,* | § <br> § | **JURY TRIAL DEMANDED** |
| | § | |
| **v.** | § <br> § | **COLLECTIVE ACTION** <br> **PURSUANT TO 29 U.S.C. § 216(b)** |
| **WHITE HAWK RETAIL SERVICES LLC D/B/** <br> **FALCON RETAIL SERVICES** | § <br> § <br> § | **CLASS ACTION** <br> **PURSUANT TO FED. R. CIV. P. 23** |
| *Defendant.* | § <br> § | |

## ORIGINAL COLLECTIVE/CLASS ACTION COMPLAINT

Quetin Monday brings this action individually and on behalf of all others similarly situated (hereinafter "Plaintiff and the Putative Class Members") who worked for White Hawk Retail Services LLC d/b/a Falcon Retail Services ("White Hawk") and were paid a straight hourly wage but no overtime at any time during the relevant statutes of limitation through the final disposition of this matter, seeking all available relief, including compensation, liquidated damages, attorneys' fees, and costs, pursuant the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.*, the Illinois Minimum Wage Law (hereinafter "IMWL"), 820 ILCS 105/1 *et seq.*, and the Illinois Wage Payment and Collection Act 820 ILCS 115/1 *et seq.* ("IWPCA") (the IMWL and the IWPCA will be referred to collectively as the "Illinois Acts"), the Kentucky Wage and Hour Act, KY. REV. STAT. ANN. §§ 337.010, *et seq.* (hereinafter the "Kentucky Acts"), and the Indiana Minimum Wage Law, IND. CODE ANN. § 22-2-2-1, *et seq* (hereinafter the "IMWL").

Plaintiff's FLSA claims are asserted as a collective action under Section 16(b) of the FLSA, 29 U.S.C. §216(b), while his respective state law claims are asserted as class actions under Federal Rule of

Civil Procedure 23. The following allegations are based on personal knowledge as to Plaintiff's own conduct and are made on information and belief as to the acts of others.

## I.
## OVERVIEW

1.      This lawsuit includes a collective action to recover overtime wages and liquidated damages brought pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201–19 and class actions pursuant to the state laws of Illinois, Kentucky, and Indiana pursuant to FED. R. CIV. P. 23 to recover unpaid wages, unpaid overtime, and other applicable penalties.

2.      Plaintiff and the Putative Class Members are those similarly situated individuals who worked for White Hawk, anywhere in the United States, at any time during the relevant statutes of limitation through the final disposition of this matter, and were paid a straight hourly wage for all hours worked, but did not receive overtime for all hours worked over forty (40) in each workweek.

3.      White Hawk misclassified Plaintiff and the Putative Class Members as independent contractors.

4.      Although Plaintiff and the Putative Class Members routinely work (and worked) in excess of forty (40) hours per workweek, Plaintiff and the Putative Class Members were not paid overtime of at least one and one-half their regular rates for all hours worked in excess of forty (40) hours per workweek.

5.      The decision by White Hawk not to pay overtime compensation to Plaintiff and the Putative Class Members was neither reasonable nor in good faith.

6.      White Hawk knowingly and deliberately failed to compensate Plaintiff and the Putative Class Members overtime of at least one and one-half their regular rates for all hours worked in excess of forty (40) hours per workweek.

7.      Plaintiff and the Putative Class Members did not and currently do not perform work that meets the definition of exempt work under the FLSA or relevant state law.

8. Plaintiff and the Putative Class Members therefore seek to recover all unpaid overtime and other damages owed under the FLSA as a collective action pursuant to 29 U.S.C. § 216(b), and to recover all unpaid overtime and other damages owed under the Illinois Acts, Kentucky Acts, and the IMWL as class actions pursuant to Federal Rule of Civil Procedure 23.

9. Plaintiff prays that all similarly situated individuals (Putative Class Members) be notified of the pendency of this action to apprise them of their rights and provide them an opportunity to opt-in to this lawsuit.

10. Plaintiff also prays that the Rule 23 classes are certified as defined herein, and Plaintiff Monday be designated as the Class Representative of both the Illinois, Kentucky, and Indiana classes.

## II.
## THE PARTIES

11. Plaintiff Quetin Monday ("Monday") worked for White Hawk within the relevant time period. Plaintiff Monday did not receive overtime compensation for all hours worked in excess of forty (40) hours per workweek.[1]

12. The FLSA Collective Members include those similarly situated individuals who worked for White Hawk, anywhere in the United States, at any time from January 6, 2019 through the final disposition of this matter, and have been subjected to the same illegal pay system under which Plaintiff Monday worked and was paid.

13. The Illinois Class Members are those similarly situated individuals who worked for White Hawk, anywhere in the State of Illinois, at any time from January 6, 2019 through the final disposition of this matter, and have been subjected to the same illegal pay system under which Plaintiff Monday worked and was paid.

---

[1] The written consent of Quetin Monday is hereby attached as Exhibit A.

14. The Kentucky Class Members are those similarly situated individuals who worked for White Hawk, anywhere in the State of Kentucky, at any time from January 6, 2017 through the final disposition of this matter, and have been subjected to the same illegal pay system under which Plaintiff Monday worked and was paid.

15. The Indiana Class Members are those similarly situated individuals who worked for White Hawk, anywhere in the State of Indiana, at any time from January 6, 2019 through the final disposition of this matter, and have been subjected to the same illegal pay system under which Plaintiff Monday worked and was paid.

**16.** White Hawk Retail Services LLC d/b/a Falcon Retail Services ("White Hawk") is a domestic limited liability company doing business in the State of Ohio (Licking County) and may be served with process through their registered agent for service: **James Fulk, 1499 Highpoint Dr. Newark, Ohio 43055.**

### III.
### JURISDICTION & VENUE

17. This Court has subject matter jurisdiction over the FLSA claims pursuant to 28 U.S.C. § 1331 as this is an action arising under 29 U.S.C. §§ 201 *et. seq.*

18. This Court has supplemental jurisdiction over the additional state law claims under 29 U.S.C. § 1367.

19. This Court has specific personal jurisdiction over White Hawk because the cause of action arose within this District as a direct result of White Hawk's conduct within this District.

20. Venue is proper in the Southern District of Ohio because this is a judicial district where a substantial part of the events or omissions giving rise to the claim occurred.

21. Specifically, White Hawk's corporate headquarters are in Granville, Ohio, which is located within this District and Division.

22.　　　Venue is therefore proper in this Court pursuant to 28 U.S.C. § 1391.

## IV.
## ADDITIONAL FACTS

23.　　　White Hawk is hired by companies throughout the United States to redesign and remodel store interiors to increase store sales.[2]

24.　　　As part of their services, White Hawk employed (and continues to employ) numerous individuals during the respective statutes of limitation.

25.　　　White Hawk paid individuals a straight hourly wage for all hours worked but no overtime—including Plaintiff Monday and the individuals that make up the putative or potential class.

26.　　　While exact job titles may differ, these workers were subjected to the same or similar illegal pay practices for similar work.

27.　　　Plaintiff Monday has worked exclusively for White Hawk as a Merchandiser, Installer, and Mover in Illinois, Indiana, and Kentucky since approximately January 2021.

28.　　　Based on the schedules set by White Hawk, Plaintiff and the Putative Class Members worked over forty (40) hours nearly every (if not every) workweek they performed services for White Hawk.

29.　　　Although it is well-known that blue-collar workers like Plaintiff and the Putative Class Members are not exempt from overtime, White Hawk did not pay Plaintiff and the Putative Class Members the additional overtime premium required by the FLSA for hours worked in excess of forty (40) in a workweek.

30.　　　Plaintiff and the Putative Class Members' primary job duties involve traveling across the United States to White Hawk's customers' stores to remodel the interior designs, install new fixtures, install new graphics, move merchandise around, and generally alter the interior of the store.

---

[2] http://teamwhitehawk.com/.

31. Plaintiff and the Putative Class Members would conduct their day-to-day activities within mandatory and designed parameters and in accordance with pre-determined operational plans created by White Hawk and/or their clients.

32. Plaintiff and the Putative Class Members' daily and weekly activities were routine and largely governed by standardized plans, procedures, and checklists created by White Hawk.

33. Virtually every job function was pre-determined by White Hawk, including the tools to use at a job site, Plaintiff and the Putative Class Members' schedule of work, and related work duties.

34. Plaintiff and the Putative Class Members were prohibited from varying their job duties outside of the predetermined parameters.

35. Moreover, Plaintiff and the Putative Class Members' job functions were primarily technical and manual labor in nature, requiring little to no official training, much less a college education or other advanced degree.

36. Plaintiff and the Putative Class Members are blue-collar workers.

37. They rely on their hands, physical skills, and energy to perform manual and routine labor.

38. White Hawk determined the hours Plaintiff and the Putative Class Members worked.

39. White Hawk set Plaintiff and the Putative Class Members' pay and controlled the number of hours they worked on a weekly basis.

40. White Hawk set all employment-related policies applicable to Plaintiff and the Putative Class Members.

41. White Hawk maintained control over pricing and marketing.

42. White Hawk also chose equipment and product suppliers.

43.     White Hawk owned or controlled the equipment and supplies that Plaintiff and the Putative Class Members used to perform their work.

44.     White Hawk had the power to hire and fire Plaintiff and the Putative Class Members.

45.     White Hawk made all personnel and payroll decisions with respect to Plaintiff and the Putative Class Members, including but not limited to, the decision to pay Plaintiff and the Putative Class Members a straight hourly wage for all hours worked with no overtime pay.

46.     White Hawk reimbursed Plaintiff and the Putative Class Members for expenses.

47.     White Hawk also paid and/or reimbursed Plaintiff and the Putative Class Members for their White Hawk uniforms.

48.     White Hawk provided tools and equipment that Plaintiff and the Putative Class Members used.

49.     Plaintiff and the Putative Class Members did not employ their own workers.

50.     Plaintiff and the Putative Class Members worked continuously for White Hawk on a permanent full-time basis.

51.     White Hawk, instead of Plaintiff and the Putative Class Members, made the large capital investments in leases, buildings, equipment, tools, and supplies.

52.     Plaintiff and the Putative Class Members relied exclusively on White Hawk for their work.

53.     Plaintiff and the Putative Class Members did not market any business or services of their own.

54.     Plaintiff and the Putative Class Members worked the hours assigned by White Hawk.

55.     Plaintiff and the Putative Class Members performed duties assigned by White Hawk.

56.     Plaintiff and the Putative Class Members worked on projects assigned by White Hawk.

57.     Plaintiff and the Putative Class Members worked for the benefit of White Hawk and their customers.

58.     White Hawk paid Plaintiff and the Putative Class Members on a bi-weekly basis.

59.     Plaintiff and the Putative Class Members did not earn a profit based on any business investment of their own.

60.     Rather, Plaintiff and the Putative Class Members' only earning opportunity was based on the number of hours they were allowed to work, which was controlled by White Hawk and their customers.

61.     White Hawk improperly classified Plaintiff and the Putative Class Members as independent contractors.

62.     The classification was improper because Plaintiff and the Putative Class Members were not in business for themselves.

63.     Instead, they were economically dependent upon White Hawk for their work.

64.     The FLSA mandates that overtime be paid at one and one-half times an employee's regular rate of pay.

65.     White Hawk denied Plaintiff and the Putative Class Members overtime pay as a result of a widely applicable, illegal pay practice.

66.     Plaintiff and the Putative Class Members regularly worked in excess of forty (40) hours per week but never received overtime compensation.

67.     White Hawk applied this pay practice despite clear and controlling law that states that Plaintiff and the Putative Class Members were White Hawk's ***non-exempt*** employees, and not independent contractors.

68.     Accordingly, White Hawk's pay policies and practices blatantly violated (and continue to violate) the FLSA, the Illinois Acts, the Kentucky Acts, and the IMWL.

**V.**
**CAUSES OF ACTION**

**COUNT ONE**
**(Collective Action Alleging FLSA Violations)**

**A.    FLSA COVERAGE**

69.    All previous paragraphs are incorporated as though fully set forth herein.

70.    The FLSA Collective is defined as:

**ALL MERCHANDISERS, INSTALLERS, AND MOVERS WHO WORKED FOR WHITE HAWK RETAIL SERVICES LLC D/B/A FALCON RETAIL SERVICES, ANYWHERE IN THE UNITED STATES, AT ANY TIME FROM JANUARY 6, 2019 THROUGH THE FINAL DISPOSITION OF THIS MATTER. ("FLSA Collective" or "FLSA Collective Members").**

71.    At all times hereinafter mentioned, White Hawk has been an employer within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

72.    At all times hereinafter mentioned, White Hawk has been an enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

73.    At all times hereinafter mentioned, White Hawk has been an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), in that said enterprise has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person, or in any closely related process or occupation directly essential to the production thereof, and in that those enterprises have had, and have, an annual gross volume of sales made or business done of not less than $500,000.00 (exclusive of excise taxes at the retail level which are separately stated).

74.    During the respective periods of Plaintiff and the FLSA Collective Members' employment by White Hawk, these individuals provided services for White Hawk that involved interstate commerce for purposes of the FLSA.

75.     In performing the operations described hereinabove, Plaintiff and the FLSA Collective Members were engaged in commerce or in the production of goods for commerce within the meaning of §§ 203(b), 203(i), 203(j), 206(a), and 207(a) of the FLSA. 29 U.S.C. §§ 203(b), 203(i), 203(j), 206(a), 207(a).

76.     Specifically, Plaintiff and the FLSA Collective Members are (or were) **_non-exempt_** employees who worked for White Hawk and were engaged in services that were directly essential to the production of services for White Hawk and related to traveling across the United States to redesign store fronts. 29 U.S.C. § 203(j).

77.     At all times hereinafter mentioned, Plaintiff and the FLSA Collective Members are (or were) individual employees who were engaged in commerce or in the production of goods for commerce as required by 29 U.S.C. §§ 206–07.

78.     In violating the FLSA, White Hawk acted willfully, without a good faith basis and with reckless disregard of applicable federal law.

79.     The proposed collective of similarly situated employees, i.e. putative collective members sought to be certified pursuant to 29 U.S.C. § 216(b), is defined in Paragraph 70.

80.     The precise size and identity of the proposed class should be ascertainable from the business records, tax records, and/or employee or personnel records of White Hawk.

**B.     FAILURE TO PAY WAGES IN ACCORDANCE WITH THE FLSA**

81.     All previous paragraphs are incorporated as though fully set forth herein.

82.     White Hawk violated provisions of Sections 7 and 15 of the FLSA, 29 U.S.C. §§ 207, and 215(a)(2) by employing individuals in an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the FLSA for workweeks longer than forty (40) hours without compensating such employees for hours worked in excess of forty (40) hours per week at rates at least one and one-half times the regular rates.

83.     Plaintiff and the FLSA Collective Members have suffered damages and continue to suffer damages as a result of White Hawk's acts or omissions as described herein; though White Hawk is in possession and control of necessary documents and information from which Plaintiff and the FLSA Collective Members would be able to precisely calculate damages.

84.     Moreover, White Hawk knowingly, willfully and in reckless disregard carried out their illegal pattern of failing to pay Plaintiff and other similarly situated employees overtime compensation. 29 U.S.C. § 255(a).

85.     White Hawk knew or should have known their pay practices were in violation of the FLSA.

86.     White Hawk is a sophisticated party and employer, and therefore knew (or should have known) their policies were in violation of the FLSA.

87.     Plaintiff and the FLSA Collective Members, on the other hand, are (and were) unsophisticated employees who trusted White Hawk to pay overtime in accordance with the law.

88.     The decision and practice by White Hawk to not pay overtime was neither reasonable nor in good faith.

89.     Accordingly, Plaintiff and the Putative Class Members are entitled to overtime wages for all hours worked in excess of forty (40) in a workweek pursuant to the FLSA in an amount equal to one-and-a-half times their regular rate of pay, plus liquidated damages, attorneys' fees and costs.

## C.     FLSA COLLECTIVE ACTION ALLEGATIONS

90.     All previous paragraphs are incorporated as though fully set forth herein.

91.     Pursuant to 29 U.S.C. § 216(b), this collective claim is made on behalf of all those who are (or were) similarly situated to Plaintiff.

92.     Other similarly situated employees have been victimized by White Hawk's patterns, practices, and policies, which are in willful violation of the FLSA.

93. The FLSA Collective Members are defined in Paragraph 70.

94. White Hawk's failure to pay any overtime compensation results from generally applicable policies and practices and does not depend on the personal circumstances of the individual FLSA Collective Members.

95. Thus, Plaintiff's experiences are typical of the experiences of the FLSA Collective Members.

96. The specific job titles or precise job requirements of the various FLSA Collective Members does not prevent collective treatment.

97. All of the FLSA Collective Members—regardless of their specific job titles, precise job requirements, rates of pay, or job locations—are entitled to be properly compensated for all hours worked in excess of forty (40) hours per workweek.

98. Although the issues of damages may be individual in character, there is no detraction from the common nucleus of liability facts.

99. Indeed, the FLSA Collective Members are blue-collar workers entitled to overtime after forty (40) hours in a week.

100. White Hawk has employed a substantial number of similarly situated Merchandisers across the United States since January 6, 2019.

101. These workers are geographically dispersed, residing and working in locations across the United States.

102. Because these workers do not have fixed work locations, they may work in different states across the country in the course of a given year.

103. Absent a collective action, many members of the proposed FLSA collective likely will not obtain redress of their injuries and White Hawk will retain the proceeds of their rampant violations.

104.　Moreover, individual litigation would be unduly burdensome to the judicial system.

105.　Concentrating the litigation in one forum will promote judicial economy and parity among the claims of the individual members of the classes and provide for judicial consistency.

106.　Accordingly, the FLSA collective of similarly situated plaintiffs should be certified as defined as in Paragraph 70 and notice should be promptly sent.

**<ins>COUNT TWO</ins>**
**(Class Action Alleging Violations of the Illinois Acts)**

**A.　ILLINOIS ACTS COVERAGE**

107.　Plaintiff incorporates by reference all paragraphs and allegations set forth in the statement of facts of this complaint as though fully and completely set forth herein.

108.　The Illinois Class is defined as:

**ALL MERCHANDISERS, INSTALLERS, AND MOVERS WHO WORKED FOR WHITE HAWK RETAIL SERVICES LLC D/B/A FALCON RETAIL SERVICES, ANYWHERE IN THE STATE OF ILLINOIS, AT ANY TIME FROM JANUARY 6, 2019 THROUGH THE FINAL DISPOSITION OF THIS MATTER. ("Illinois Class" or "Illinois Class Members")**

109.　At all times hereinafter mentioned, White Hawk was and has been an "employer" within the meaning of the Illinois Acts. *See* 820 ILCS § 115/1; *see also* 820 ILCS § 105/3(c)–(d).

110.　At all times hereinafter mentioned, Plaintiff Monday and the Illinois Class Members have been "employees" within the meaning of the Illinois Acts. *See id.*

111.　Plaintiff Monday and the Illinois Class Members were or have been employed by White Hawk at any time since January 6, 2019, and have been covered employees entitled to the protections of the Illinois Acts and were not exempt from the protections of the Illinois Acts.

112.　The employer, White Hawk, is not exempt from paying overtime benefits under the Illinois Acts.

**B.　FAILURE TO PAY WAGES IN ACCORDANCE WITH THE ILLINOIS ACTS**

113.　All previous paragraphs are incorporated as though fully set forth herein.

114. The Illinois Acts require employers like White Hawk to pay overtime wages. *See* 820 ILCS § 105/12; *see also* 820 ILCS § 115/3.

115. The Plaintiff Monday and Illinois Class Members are **_non-exempt_** employees who are entitled to be paid overtime wages. *See id.*

116. White Hawk has a company-wide policy and practice of failing to pay Plaintiff Monday and Illinois Class Members overtime compensation for hours worked in excess of forty (40) in a workweek. 820 ILCS § 105/5.

117. White Hawk has a continuing policy and practice of failing to pay overtime wages for all hours worked in excess of forty (40) hours in a workweek. *See* 820 ILCS § 105/4a.

118. As a result of White Hawk's illegal and company-wide policies applicable to Plaintiff Monday and Illinois Class Members' wages, and their failure to pay overtime wages to the Illinois Class Members, White Hawk violated the Illinois Acts.

119. White Hawk's failure to pay overtime wages for all hours worked in excess of forty (40) in a workweek to the Illinois Class Members who performed work on behalf of White Hawk in Illinois is part of a continuing course of conduct.

120. Plaintiff Monday and the Illinois Class Members who performed work on behalf of White Hawk in Illinois are entitled to invoke the benefits of the Illinois Acts, including but not limited to 820 ILCS § 105/12(a); 820 ILCS § 115/14; 820 ILCS § 115/11; and 815 ILCS § 205/2.

121. As a result, this action, "may encompass all violations that occurred as part of White Hawk's continuing course of conduct regardless of the date on which they occurred."

122. Plaintiff Monday and the Illinois Class Members have suffered damages and continue to suffer damages as a result of White Hawk's acts or omissions described herein; though White Hawk is in possession and control of necessary documents and information from which the Illinois Class Members would be able to precisely calculated damages.

123. Plaintiff Monday and Illinois Class Members seek the amount of their underpayments based on White Hawk's failure to pay wages for all hours worked, failure to pay overtime wages for all hours worked in excess of forty (40) hours in a workweek, an equal amount as liquidated damages, and such other legal and equitable relief from White Hawk's willful conduct as the Court deems just and proper.

124. Accordingly, the Illinois Acts Class should be certified as defined in Paragraph 108.

## C. ILLINOIS CLASS ALLEGATIONS

125. Plaintiff Monday brings her Illinois claims pursuant to Illinois Statutes as a class action pursuant to Rule 23 on behalf of all similarly situated individuals employed by White Hawk to work in Illinois at any time since January 6, 2019.

126. Class action treatment of Plaintiff Monday and the Illinois Class Members' claims is appropriate because, as alleged below, all of Rule 23's class action requisites are satisfied.

127. The number of Illinois Class Members is so numerous that joinder of all class members is impracticable.

128. Plaintiff Monday is a member of the Illinois Class, his claims are typical of the claims of the other Illinois Class Members, and he has no interests that are antagonistic to or in conflict with the interests of the other Illinois Class Members.

129. Plaintiff Monday and his counsel will fairly and adequately represent the Illinois Class Members and their interests.

130. Class certification is appropriate under Federal Rule of Civil Procedure 23(b)(3) because common questions of law and fact predominate over questions affecting only individual class members and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.

131. Accordingly, the Illinois Class should be certified as defined in Paragraph 108.

**COUNT THREE**
**(Class Action Alleging Violations of the Kentucky Wage Laws)**

**A.     VIOLATIONS OF KENTUCKY LAW**

132.    Plaintiff incorporates by reference all paragraphs and allegations set forth in the statement of facts of this complaint as though fully and completely set forth herein.

133.    The Kentucky Class is defined as:

**ALL MERCHANDISERS, INSTALLERS, AND MOVERS WHO WORKED FOR WHITE HAWK RETAIL SERVICES LLC D/B/A FALCON RETAIL SERVICES, ANYWHERE IN THE STATE OF KENTUCKY, AT ANY TIME FROM JANUARY 6, 2017 THROUGH THE FINAL DISPOSITION OF THIS MATTER. ("Kentucky Class" or "Kentucky Class Members").**

134.    At all times hereinafter mentioned, White Hawk has been an employer within the meaning of the Kentucky Wage Laws, KY. REV. STAT. ANN. §337.015.

135.    At all times hereinafter mentioned, Plaintiff Monday and the Kentucky Class Members have been employees within the meaning of Kentucky Statutes. *See* KY. REV. STAT. ANN. §337.015.

136.    Plaintiff Monday and the Kentucky Class Members were or have been employed by White Hawk at any time since January 6, 2017, and have been covered employees entitled to the protections of the Kentucky Statutes.

137.    The employer, White Hawk, is not exempt from paying overtime benefits under the Kentucky Statues.

**B.     FAILURE TO PAY WAGES AND OVERTIME IN ACCORDANCE WITH THE KENTUCKY STATUTES**

138.    The Kentucky Statutes require employers—like White Hawk—to pay employees overtime compensation. *See* KY. REV. STAT. ANN § 337.285

139.    Plaintiff Monday and the Kentucky Class Members seek to recover their unpaid overtime that is owed to them as a result of White Hawk's company-wide policy to deny them overtime compensation.

140.     Plaintiff Monday and the Kentucky Class Members have suffered damages and continue to suffer damages as a result of White Hawk's acts or omissions as described herein; though White Hawk is in possession and control of necessary documents and information from which Plaintiff Monday and the Kentucky Class Members would be able to precisely calculate damages.

141.     Plaintiff Monday, on behalf of himself and the Kentucky Class Members, seeks recovery of the unpaid overtime earned and due, liquidated damages, attorneys' fees, and costs. *See* KY. REV. STAT. ANN § 337.385.

142.     In violating the Kentucky Statutes, White Hawk acted willfully, without a good faith basis, and with reckless disregard of applicable Kentucky law.

143.     The proposed class of employees, i.e. putative class members sought to be certified pursuant to the Kentucky Statutes, is defined in Paragraph 133.

144.     The precise size and identity of the proposed class should be ascertainable from the business records, tax records, and/or employee or personnel records of White Hawk.

## C.     KENTUCKY CLASS ALLEGATIONS

145.     Plaintiff Monday brings his Kentucky claims pursuant to Kentucky Statutes as a class action pursuant to Rule 23 on behalf of all similarly situated individuals employed by White Hawk to work in Kentucky at any time since January 6, 2017.

146.     Class action treatment of Plaintiff Monday and the Kentucky Class Members' claims is appropriate because, as alleged below, all of Rule 23's class action requisites are satisfied.

147.     The number of Kentucky Class Members is so numerous that joinder of all class members is impracticable.

148.     Plaintiff Monday is a member of the Kentucky Class, his claims are typical of the claims of the other Kentucky Class Members, and he has no interests that are antagonistic to or in conflict with the interests of the other Kentucky Class Members.

149.    Plaintiff Monday and his counsel will fairly and adequately represent the Kentucky Class Members and their interests.

150.    Class certification is appropriate under Federal Rule of Civil Procedure 23(b)(3) because common questions of law and fact predominate over questions affecting only individual class members and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.

151.    Accordingly, the Kentucky Class should be certified as defined in Paragraph 133.

**COUNT FOUR**
**(Class Action Alleging Violations of the IMWL)**

**A.    VIOLATIONS OF INDIANA LAW**

152.    Plaintiff incorporates by reference all paragraphs and allegations set forth in the statement of facts of this complaint as though fully and completely set forth herein.

153.    The Indiana Class is defined as:

**ALL MERCHANDISERS, INSTALLERS, AND MOVERS WHO WORKED FOR WHITE HAWK RETAIL SERVICES LLC D/B/A FALCON RETAIL SERVICES AND WERE NOT INVOLUNTARILY TERMINATED, ANYWHERE IN THE STATE OF INDIANA, AT ANY TIME FROM JANUARY 6, 2019 THROUGH THE FINAL DISPOSITION OF THIS MATTER. ("Indiana Class" or "Indiana Class Members").**

154.    At all times hereinafter mentioned, White Hawk has been an employer within the meaning of the IMWL. IND. CODE ANN. § 22-2-2-3.

155.    At all times hereinafter mentioned, Plaintiff Monday and the Indiana Class Members have been employees within the meaning of IMWL. *See Id.*

156.    Plaintiff Monday and the Indiana Class Members were or have been employed by White Hawk at any time since January 6, 2019, and have been covered employees entitled to the protections of the IMWL.

157. The employer, White Hawk, is not exempt from paying overtime benefits under the IMWL.

## B.   FAILURE TO PAY WAGES AND OVERTIME IN ACCORDANCE WITH THE IMWL

158. The IMWL require employers—like White Hawk—to pay employees overtime compensation. *See* IND. CODE ANN. § 22-2-2-4.

159. Plaintiff Monday and the Indiana Class Members seek to recover their unpaid overtime that is owed to them as a result of White Hawk's company-wide policy to deny them overtime compensation.

160. Plaintiff Monday and the Indiana Class Members have suffered damages and continue to suffer damages as a result of White Hawk's acts or omissions as described herein; though White Hawk is in possession and control of necessary documents and information from which Plaintiff Monday and the Indiana Class Members would be able to precisely calculate damages.

161. Plaintiff Monday, on behalf of himself and the Indiana Class Members, seeks recovery of the unpaid overtime earned and due, liquidated damages, attorneys' fees, and costs. *See* IND. CODE ANN. § 22-2-2-9.

162. In violating the IMWL, White Hawk acted willfully, without a good faith basis, and with reckless disregard of applicable Indiana law.

163. The proposed class of employees, i.e. putative class members sought to be certified pursuant to the IMWL, is defined in Paragraph 153.

164. The precise size and identity of the proposed class should be ascertainable from the business records, tax records, and/or employee or personnel records of White Hawk.

## C.   INDIANA CLASS ALLEGATIONS

165.    Plaintiff Monday brings his Indiana claims pursuant to IMWL as a class action pursuant to Rule 23 on behalf of all similarly situated individuals employed by White Hawk to work in Indiana at any time since January 6, 2019.

166.    Class action treatment of Plaintiff Monday and the Indiana Class Members' claims is appropriate because, as alleged below, all of Rule 23's class action requisites are satisfied.

167.    The number of Indiana Class Members is so numerous that joinder of all class members is impracticable.

168.    Plaintiff Monday is a member of the Indiana Class, his claims are typical of the claims of the other Indiana Class Members, and he has no interests that are antagonistic to or in conflict with the interests of the other Indiana Class Members.

169.    Plaintiff Monday and his counsel will fairly and adequately represent the Indiana Class Members and their interests.

170.    Class certification is appropriate under Federal Rule of Civil Procedure 23(b)(3) because common questions of law and fact predominate over questions affecting only individual class members and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.

171.    Accordingly, the Indiana Class should be certified as defined in Paragraph 153.

**VI.**
**RELIEF SOUGHT**

172.    Plaintiff respectfully prays for judgment against White Hawk as follows:

a.    For an Order recognizing this proceeding as a collective action pursuant to Section 216(b) of the FLSA, certifying the FLSA Collective as defined in Paragraph 70 and requiring White Hawk to provide the names, addresses, e-mail addresses, telephone numbers, and social security numbers of all potential collective action members;

b. For an order certifying the Illinois Class as defined in Paragraph 108, and designating Plaintiff Monday as Representative of the Illinois Class;

c. For an order certifying the Kentucky Class as defined in Paragraph 133, and designating Plaintiff Monday as Representative of the Kentucky Class;

d. For an order certifying the Indiana Class as defined in Paragraph 153, and designating Plaintiff Monday as Representative of the Indiana Class;

e. For an Order approving the form and content of a notice to be sent to all potential FLSA Collective Members advising them of the pendency of this litigation and of their rights with respect thereto;

f. For an Order pursuant to Section 16(b) of the FLSA finding White Hawk liable for unpaid back wages due to Plaintiff (and those FLSA Collective Members who have joined in the suit), for liquidated damages equal in amount to the unpaid compensation found due to Plaintiff (and those FLSA Collective Members who have joined in the suit);

g. For an Order pursuant to Illinois law awarding Plaintiff Monday and the Illinois Class Members unpaid wages and other damages allowed by law;

h. For an Order pursuant to Kentucky law awarding Plaintiff Monday and the Kentucky Class Members unpaid wages and other damages allowed by law;

i. For an Order pursuant to Indiana law awarding Plaintiff Monday and the Indiana Class Members unpaid wages and other damages allowed by law;

j. For an Order awarding the costs and expenses of this action;

k. For an Order awarding attorneys' fees;

l. For an Order awarding pre-judgment and post-judgment interest at the highest rates allowed by law;

m. For an Order awarding Plaintiff Monday a service award as permitted by law;

n.      For an Order compelling the accounting of the books and records of White Hawk, at White Hawk's own expense;

o.      For an Order providing for injunctive relief prohibiting White Hawk from engaging in future violations of the FLSA, the Illinois Acts, the Kentucky Acts, and the IMWL and requiring White Hawk to comply with such laws going forward; and

p.      For an Order granting such other and further relief as may be necessary and appropriate.

Date:   January 6, 2022           Respectfully submitted,

By:   */s/ Robert E. DeRose*
      **Robert E. DeRose** (OH Bar No. 005214)
      bderose@barkanmeizlish.com
      **BARKAN MEIZLISH DEROSE COX, LLP**
      4200 Regent Street, Suite 210
      Columbus, Ohio 43219
      Telephone: (614) 221-4221
      Facsimile: (614) 744-2300

By:   */s/ Clif Alexander*
      **Clif Alexander** (application *pro hac vice* forthcoming)
      Texas Bar No. 24064805
      clif@a2xlaw.com
      **Austin W. Anderson** (application *pro hac vice* forthcoming)
      Texas Bar No. 24045189
      austin@a2xlaw.com
      **ANDERSON ALEXANDER, PLLC**
      819 N. Upper Broadway
      Corpus Christi, Texas 78401
      Telephone: (361) 452-1279
      Facsimile: (361) 452-1284

      ***Counsel for Plaintiff and the Putative Collective/Class Members***